**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| MOBILE TELECOMMUNICATIONS TECHNOLOGIES, LLC, | § § § | |
| Plaintiff, | § | |
| v. | § § | Case No. 2:14-cv-01057-JRG-RSP |
| APPLE INC., | § § | |
| Defendant. | § § | |
| | § | |

**APPLE INC.'S MOTION TO DISMISS**
**OR, IN THE ALTERNATIVE,**
**MOTION TO STAY**

Defendant Apple Inc. ("Apple") respectfully moves to dismiss the complaint filed by

Plaintiff Mobile Telecommunications Technologies, LLC ("MTel") pursuant to Fed. R. Civ. P.

12(b)(6) or, in the alternative, requests that the Court stay the above-captioned action ("*MTel II*")

pending final resolution of related Case No. 2:13-cv-00258-RSP ("*MTel I*").

## I.      INTRODUCTION

Having presided over the *MTel I* trial in November 2014, the Court is fully aware of the

ongoing dispute between Apple and MTel.  Apple's alleged infringement of U.S. Patent Nos.

5,809,428 ("the 428 Patent") and 5,754,946 ("the 946 Patent") was litigated in *MTel I*, which

culminated in a jury verdict of infringement on five of MTel's asserted patents, including the 428

and 946 Patents.[1]  As MTel acknowledges in its new complaint, the Court entered judgment in

favor of MTel and against Apple, awarding MTel $23.575 million as a lump-sum royalty.[2]

MTel, however, filed another complaint on November 19, 2014, alleging infringement of the 428

Patent and the 946 Patent by Apple's iPhone 6, iPhone 6 Plus, and all versions of iPad running

Apple's iOS 8 operating system.

The Court should dismiss the *MTel II* complaint because MTel's infringement allegations

in this case were fully subsumed by, and thus fall within the scope of, the judgment in *MTel I*.

MTel is not entitled to any further relief related to the 428 and 946 Patents because the *MTel I*

award, if it stands, grants Apple a fully paid-up license for all past and future sales of products

that incorporate the patented technology.  Thus, MTel should not be permitted to take a second

---

[1] The 428 Patent has been referred to as the "probe message" patent.  The 946 Patent is known as
the "retransmission" patent.

[2] Apple has filed motions for judgment as a matter of law and for a new trial in *MTel I*.  Those
motions are currently pending.

bite at the proverbial apple.  In the alternative, the Court should exercise its inherent discretion to stay *MTel II* until *MTel I* is fully resolved.

## II.     FACTUAL BACKGROUND

### A.     *MTel I*

MTel's first complaint against Apple was filed on April 2, 2013, alleging infringement of seven U.S. patents, including the 428 Patent and the 946 Patent.  *See* Exh. 1 [*MTel I* Amended Complaint, Dkt. No. 29].  Specifically, MTel accused "all versions of Apple's iPhone, iPad and iPod Touch" of infringing the 428 Patent and the 946 Patent.  *Id.* at ¶¶ 25-32.

At the final pre-trial conference held November 7, 2014, the parties discussed both the issue of damages and Apple's newly-released operating system iOS 8.  As to damages, and on the eve of the pre-trial conference, MTel served a "supplemental" damages report in which its expert, Mr. Bratic, increased his royalty amount by projecting sales figures past the date of Apple's production of sales information.  *See* Exh. 2 [*MTel I* Pretrial Tr. 11/7/2014] at 18:21-19:13.  MTel also requested updated sales information from Apple.  *Id.*  But as Apple pointed out, the request for updated sales figures was not consistent with MTel's position that a single lump-sum royalty, as opposed to an ongoing royalty, was the appropriate measure of damages.  *Id.* at 20:1-24.  Accordingly, updated sales figures were not relevant to MTel's damages theory, nor was it appropriate for MTel to supplement it damages report on the eve of trial since MTel's expert could have projected sales figures in his initial report.  *Id.*; *see also id.* at 23:23-24:5.  Importantly, MTel did not contest that its damages theory was based on a single-lump sum payment for the life of the patents.  *See id.* at 21:14-24, 23:23-24:5. The Court ultimately denied MTel's request for updated sales figures and to rely on Mr. Bratic's proposed supplemental report, noting that both were untimely.  *See* Exh. 3 [*MTel I* Trial. Tr. 11/10/2014 (morning)] at 6:12-8:10.

Also at the November 7th pre-trial conference, Apple objected to a single exhibit relating to Apple's recently released operating system iOS 8, arguing that iOS 8 had not been addressed in MTel's infringement contentions or in any expert report served by the parties.  *See* Exh. 2 [*MTel I* Pretrial Tr. 11/7/2014] at 58:21–59:13.  MTel contended that iOS 8 contained the same allegedly infringing features as the accused versions of iOS included in its infringement contentions.  *Id*. at 59:14-60:14 (arguing that "[a]ll versions of iOS are in the case [and that] all iOS versions are referenced in the expert reports").  As iOS 8 was introduced on September 17, 2014, after all expert reports had been served, Apple noted that neither parties' experts had analyzed or could opine on whether the new operating system—or the latest generation of Apple products—infringed the asserted patents.  *Id*. at 60:15-61:19.  As iOS 8 was a new version of Apple's mobile operating system and not merely an incremental upgrade, Apple agreed that whether it infringed the asserted patents was not an issue to be decided in *MTel I*:  "THE COURT:  So under your position, iOS 8.0 is not in the case, and the ruling – or the verdict of this jury up or down will not be binding as to that operating system?  [Apple Counsel]: "That's correct."  Exh. 2 [*MTel I* Pretrial Tr. 11/7/2014] at 62:11-14.  The Court then determined that "whether or not [iOS 8] infringes is something that will be for another case."  *Id*. at 63:1-15.

Trial on six of the seven patents—including the 428 and 946 Patents—commenced November 10, 2014.[3]  Significantly, both MTel and Apple argued during trial that the jury should engage in a hypothetical negotiation and that any reasonable royalty should be in the form of a lump-sum payment rather than a running royalty.  A lump-sum royalty is a one-time payment that provides the licensee with the unfettered right to use (*i.e.*, license) the patented

---

[3] The other four patents were U.S. Patent Nos. 5,894,506; 5,590,403; 5,915,210; and 5,659,891. The claims regarding U.S. Patent No. 5,786,748 were dismissed before trial.

technology for the life of the patent.  *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1326 (Fed. Cir. 2009).

In its opening statement, MTel informed the jury that if Apple had infringed any of the asserted patents, the jury would need to determine the amount of money Apple should "pay as a fair value for the use of those patents."  *See* Exh. 4 [*MTel I* Trial Tr. 11/10/2014 (afternoon)] at 4:13-19; *see also id.* at 16:7-10 ("If, in fact, you determine that Apple has infringed these products, you are to determine what's a reasonable, fair value for damages to be paid to MTel for the use of those patents.").  MTel then briefly described how the jury would use a hypothetical negotiation to determine the amount owed to MTel in the event the jury found infringement.  *See id.* at 16:11-17:4 (explaining that the hypothetical negotiation methodology requires the jury to "go back in time" and determine what the parties would have negotiated as a reasonable royalty or value for the patents if they had entered negotiations just before the infringement began); *see also Lucent*, 580 F.3d at 1324.

MTel's damages expert, Walter Bratic, testified that a patent was like a piece of real estate in that a patent "gives [the owner] the right to exclude people from coming on to [the] property, unless they have the right from the owner of that property or that patent to use that patent."  *See* Exh. 5 [*MTel I* Trial Tr. 11/13/2014 (morning)] at 139:19-140:1.  Mr. Bratic opined that the right to use MTel's property—*i.e.*, the value of Apple's alleged use of MTel's patented technology—was worth $237.2 million.  *Id.* at 140:18-22.  Mr. Bratic explained that he reached this figure by considering a hypothetical negotiation in which "all the cards are on the table" and the parties would have knowledge of Apple's future use of the patented technology.  *Id.* at 141:13-143:12; *see also* Exh. 6 [*MTel I* Trial Tr. 11/13/2014 (afternoon)] at 13:1-8 (describing "an open-book negotiation" where the parties "know what's going to happen in the future as

4

well").  Continuing with his real estate analogy, Mr. Bratic described a lump-sum royalty as an up-front payment for the entire term of the rental whereas a running royalty is paid in periodic installments throughout the rental period.  *See* Exh. 6 at 13:18-14:10.  As between these two options, Mr. Bratic opined that Apple would have agreed to license the asserted patents for a lump-sum payment for the remaining life of the patents.  *Id*. at 40:18-41:22.[4]

Apple's damages expert, Julie Davis, similarly described the hypothetical negotiation as an exercise requiring the jury "to put [itself] in the shoes of a set of hypothetical negotiators sitting down at the date of first infringement, across the table from one another, to decide how much, in this case Apple, should pay to MTel for the right to use the patented technology."  *See* Exh. 7 [*MTel I* Trial Tr. 11/14/2014 (afternoon)] at 112:16-24.  Ms. Davis agreed that if the jury found infringement, the resulting damages should be an up-front lump-sum royalty payment for the right to use MTel's patented technology rather than a running royalty.  *Id.* at 110:5-141:8. Ms. Davis disagreed with Mr. Bratic as to the amount, however, opining instead that Apple would have agreed to pay a total lump-sum payment of $1 million.  *Id.*

Before instructing the jury, the Court summarized the parties' contentions and described the accused Apple products and services as "Apple's AirPort WiFi products and iPhone, iPad, or iPod Touch products [as well as] Apple Messaging Services."  *See* Exh. 8 [*MTel I* Trial Tr. 11/17/2014 (morning)] at 115:11-18.  With regard to damages, the Court instructed:

> A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the amount of royalty payment that a patent holder and the infringer would have agreed to in a

---

[4] *See also* Exh. 6 at 20:14-22 (opining that Apple's lack of design around options would leave Apple with no choice but to take a license to the asserted patents in order to continue to make products with the allegedly infringing features); 26:23-27:5 (Q: And it's your testimony—you're here telling this jury that at around the same time Mr. Fitton's company paid $8 million for these patents, a bunch of other patents, and a bunch of other assets . . . that Apple would have willingly agreed to pay—what's your number, $237 million for a license? A: Absolutely . . . .).

> hypothetical negotiation taking place just before the first infringement began. In this case, the parties agree that if MTel is entitled to damages, the royalty amount should be in the form of a lump-sum royalty. A lump-sum royalty is a royalty payment where the patent owner receives a single, upfront payment.

*Id.* at 145:6-17; *see also id.* at 146:2-5 (stating that the reasonable royalty "must be a royalty that would have resulted from the hypothetical negotiation and not simply a royalty either party would have preferred").  After deliberating, the jury returned a verdict of infringement and no invalidity for five of the six patents—including the 428 and 946 Patents—and awarded MTel a lump-sum royalty of $23.575 million.  *See* Exh. 9 [*MTel I* Verdict].

On November 20, 2014, the Court entered judgment against Apple in the amount of $23.575 million plus pre-judgment, post-judgment interest, and costs.  *See* Exh. 10 [*MTel I* Judgment].  On December 19, 2014, Apple renewed its Motions for Judgment as a Matter of Law on Non-infringement, Invalidity, and Damages.  *See MTel I*, Dkt. Nos. 87, 86, and 84. These motions are currently pending adjudication.

### B.    MTel II

On November 19, 2014, MTel filed another complaint, alleging infringement of the 428 and 946 Patents by Apple's iPhone 6 and iPhone 6 Plus and all versions of Apple's iPad running iOS 8.  *See* Dkt. No. 1.  MTel alleged that the newly accused Apple products "contain similar features that are not colorably different from those found to be infringing in [the *MTel I* litigation]."  *Id.* at ¶ 15.  In support, MTel pointed to the favorable jury verdict it received in the *MTel I* litigation.  *Id.* at ¶ 15 & Exh. C.

## III.   ARGUMENT

As discussed in detail below, the *MTel II* complaint should be dismissed for failure to state a claim because the lump-sum royalty awarded by the *MTel I* jury was effectively a fully paid-up license covering all of Apple's past and future use of the asserted patents, including any

alleged infringement of the 428 and 946 Patents by the recently released iPhone 6, iPhone 6 Plus, and iOS 8 operating system.  MTel is not entitled to double recovery for the 428 and 946 Patents. In the alternative, should the Court deny Apple's motion to dismiss, Apple respectfully requests that the Court grant a stay of the case pending resolution of the *MTel I* litigation.  For the reasons detailed below, the relevant factors overwhelmingly support a stay being entered.

> **A.     The *MTel II* Complaint Should Be Dismissed Because MTel Is Not Entitled To Further Relief For Apple's Alleged Infringement Of The 428 And 946 Patents**

A party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Such motions will be denied if, when viewed in the light most favorable to the non-movant, the complaint includes facts sufficient "to raise a right to relief above the speculative level."  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Here, MTel's second complaint should be dismissed because it seeks relief that has already been awarded.  Even assuming *arguendo* that Apple's released iPhone 6, iPhone 6 Plus, and iOS 8 operating system infringe the 428 and 946 Patents, MTel cannot recover any further damages.  Because the *MTel I* jury awarded MTel a fully paid-up lump-sum royalty of $23.575 million for five of the six patents asserted in that case, including the 428 and 946 Patents, Apple received a "freedom-to-operate" license to use the patented technology.  *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552, 1565 (Fed. Cir. 1984) ("Where the damage award is based upon an assumed license for the life of the patent . . . the license fee authorizes use."); *see also Personal Audio, LLC v. Apple Inc.*, No. 9:09-cv-00111-RC, 2011 U.S. Dist. LEXIS 83746,

at *17, 26 [Dkt. No. 492] (E.D. Tex. Jul. 29, 2011); *Lighting Ballast Control, LLC v. Philips Elecs. N. Am. Corp.*, 814 F. Supp. 2d 665, 693 (N.D. Tex. Aug. 26, 2011) (finding that the evidence presented at trial supported a lump-sum royalty payment licensing Defendant's use of the asserted patent through its expiration).  In other words, by virtue of the lump-sum royalty award, Apple has a license to use the asserted patents, including the 428 and 946 Patents, through the expiration of those patents.  No further payment is due, and no other remedy is available to MTel.

As described above, *both* parties' experts opined that the result of the hypothetical negotiation between MTel and Apple would be a lump-sum royalty payment licensing the asserted patents.  That the jury's damages award in *MTel I* covers any and all acts of infringement by Apple through the expiration of those patents—such that MTel has no further claim to other remedies for any other acts or omissions by Apple—cannot be disputed.  *See, e.g.*, *Lighting Ballast*, 814 F. Supp. 2d at 693.  Indeed, MTel's damages expert, Mr. Bratic, testified that a lump-sum royalty award functions as a fully paid-up license to Apple:

> Q.  But you say that the hypothetical negotiation would result in a lump-sum payment, right?
> A.  Yes.
> Q.  And you said that it would be for the life of the patents, right?
> A.  Right.
> Q.  So there's no obligation to pay any money, other than that that one lump sum at any time in the future ever, right?
> A.  That's correct.  If they paid a lump sum under that license.
> Q.  Okay.
> A.  And we know that some of these patents would expire in 2015 and 2016.
> Q.  So you would agree that under your theory of the lump-sum license for the life of the patents, Apple should never pay again, if they pay a lump-sum royalty?
> A.  Yeah.  And I should just clarify that point.  I'm not offering any legal -- I don't know what the law is on that point, but I'm saying from my economic financial analysis, I will agree that if they paid a lump-sum royalty in February of 2007 for $237 million, they get to practice the patents beyond the date of this trial until they expire.

*See* Exh. 6 at 40:25-41:22.

Apple's damages expert agreed that the royalty resulting from the hypothetical negotiation would be structured as an up-front lump-sum payment covering the patented technology for the life of the patents.  *See* Exh. 7 at 127:4-128:6.  Specifically, Ms. Davis testified that Apple "generally enters into lump-sum licenses, meaning it wishes to pay upfront for the right to use the patented technology over the life of those patents.  It does not typically enter into running royalty licenses where it would pay as you go."  *Id*. at 127:15-23; *see also id.* at 134:24-135:2.  Ms. Davis opined that Apple "would have paid a million dollars for the right to use all that patented technology."  *Id*. at 135:8-15.  Additionally, the Court's jury instructions noted that "the parties agree that if MTel is entitled to damages, the royalty amount should be in the form of a lump-sum royalty [which is] a royalty payment where the patent owner receives a single, upfront payment." Exh. 8 at 145:6-17.

The jury returned a verdict awarding MTel a lump-sum amount of $23.575 million as a reasonable royalty.  *See* Exh. 9.  It is irrelevant that the jury did not award MTel the full amount of damages it sought.  The evidence and argument presented during the *MTel I* trial overwhelmingly supports the conclusion that the jury understood that its damages award would give Apple a fully paid-up license covering all past, present, and future use of the patented technology through the expiration of the asserted patents.

The *MTel II* complaint therefore fails to state a claim for relief because Apple cannot be liable for any additional damages, even if the newly accused Apple products (or any other Apple products) infringe the 428 and 946 Patents.  The facts in this case are even more compelling than those in *Personal Audio LLC v. Apple Inc.*, No. 9:09-cv-00111-RC (E.D. Tex.).  There, the jury was given the choice between competing damages models – plaintiff proposed a per-unit royalty that would include a post-trial royalty on further sales.  *Personal Audio*, 2011 U.S. Dist. LEXIS

83746, at *3.  Apple countered that the appropriate damages, if any, should be single lump-sum

payment covering the entire life of the patents.  *Id.*  After the jury chose to award a lump-sum

royalty (albeit higher than the amount proposed by Apple), the plaintiff moved for judgment as a

matter of law on damages, which the Court denied:

> Personal Audio had the burden to prove the amount of its damages and may not
> now complain that the jury did not consider evidence that Personal Audio did not
> offer. Having chosen to rely on the hypothetical negotiation approach to damages,
> Personal Audio cannot complain that the jury's or the court's attention should not
> have focused primarily on factors that would have been known and considered by
> reasonable negotiators on the date of first infringement. There is sufficient
> evidence in the record from which the jury could have concluded that a lump sum
> royalty would have been considered and accepted by reasonable and well-
> informed negotiators at the time of first infringement. Further, the amount of the
> jury's award is not so low as to be unsupported by the evidence. Both the form
> and amount of the jury's award meet the statutory requirement of 35 U.S.C. § 284
> —an adequate award, not less than a reasonable royalty.  The jury was instructed
> on the effect of a lump sum award…. Further, the court finds that, in light of the
> jury instructions and verdict form, the presentations of the parties' respective
> damages experts, and the closing arguments of counsel, there was no confusion on
> the part of the jury that selection of a lump sum royalty would cut Personal Audio
> off from additional recovery for Apple's future use of the patented technology.

*Id*. at 4-6.  The Court thus denied plaintiff's JMOL motion, and later denied plaintiff's motion to

impose an on-going royalty because the lump sum awarded by the jury was adequate

compensation for both past and future infringement.  *Personal Audio LLC v. Apple Inc.*, No.

9:09-cv-00111-RC [Dkt. No. 515] (E.D. Tex. Aug. 22, 2011).  The facts here are even more in

Apple's favor as both MTel and Apple agreed that a lump-sum royalty for the life of the patents

was the appropriate measure of damages, both experts explained what the lump-sum award

entailed and the reasons for it, the parties argued it to the jury in their closing arguments, the

Court instructed the jury as to the meaning of a lump-sum award, and the lump-sum ultimately

awarded by the jury was significantly higher than that advocated by Apple.  Thus, just like the

plaintiff in *Personal Audio*, MTel has been adequately awarded for Apple's use of the patented technology through the life of the patents.

Unlike the facts and holding in *Personal Audio*, this Court's opinion yesterday in *Convolve v. Dell*, Case No. 2:08-CV-244-RSP, [Dkt. No. 674] (E.D. Tex. Feb. 11, 2015) is not on point here.  There, this Court found that a jury's lump-sum award based on a "narrow set of accused products" ***not*** sold by Dell did not give Dell a blanket license for all of its own products. *Id*. at 3.  Here, in contrast, the jury's lump-sum award was based on a broad range of Apple accused products, and, as already noted, the jury consistently heard throughout the trial that any lump-sum damages award would be for the life of the patents and cover all of Apple products. *Convolve* is thus inapplicable to the current facts.

In addition to not being entitled to any further damages, MTel is also not entitled to the injunctive relief it now seeks because the *MTel I* award functions as a license that permits Apple to use the patented technology.  *Open Text S.A. v. Box, Inc.*, No. 3:13-cv-04910-JD [Dkt. No. 478] (N.D. Cal. Jan. 28, 2015) (stating that if "the jury awards a fully paid-up lump sum for the life of the patents, [Plaintiff] will be precluded from seeking injunctive relief").  As the Court in *Personal Audio* pointed out, that is the risk a patentee takes when advocating for a lump-sum royalty, since there "is always the possibility that [] a licensee or defendant may develop a new product or market a new generation of an old product without paying additional royalties." *Personal Audio*, 2011 U.S. Dist. LEXIS 83746, at *15.  In short, Apple's licensed use of MTel's technology cannot be grounds for any additional claims by MTel with respect to the 428 and 946 Patents.  Because MTel is entitled to no relief for Apple's alleged infringement beyond the $23.575 million lump-sum previously awarded, the *MTel II* complaint should be dismissed.

The parties' and the Court's discussion of iOS 8 at the pre-trial conference does not change this analysis.  In response to the Court's question, Apple certainly agreed that the jury's "up-or-down" as to infringement in *MTel I* was not controlling as to the iOS products.  But the issue of whether iOS 8 infringes the 428 and 946 Patents was rendered moot by MTel's approach to damages during trial.  MTel did not offer alternative calculations or otherwise attempt to limit the jury's award to only the specific products discussed.  Instead, MTel's expert assured the jury that its lump-sum award would be the only amount Apple would ever have to pay for any and all acts of alleged infringement of the asserted patents.  *See* Exh. 6 at 40:25-41:22 ("Q.  So there's no obligation to pay any money, other than that that one lump sum at any time in the future ever, right? A.  That's correct.").  When the issue of damages arose during the November 7th pre-trial conference, MTel concurred that its damages model was based on a lump-sum royalty for the life of the patents – and as the Court pointed out, MTel could have projected additional sales in its original calculations, it simply chose not to do so.  *See* Exh. 2 at 21:14-22; Exh. 3 at 6:12-7:4.  The jury gave MTel damages in the form of a lump-sum amount, exactly as MTel requested.  Exh. 9.  Accordingly, MTel has exhausted any right it may have had to claim any other relief with respect to new products.

### B.    In the Alternative, A Stay Pending Resolution Of *MTel I* Is Appropriate

Should the Court decline to dismiss the *MTel II* complaint, however, Apple respectfully requests a stay pending final resolution of the *MTel I* litigation by this Court and/or the Court of Appeals for the Federal Circuit.  If the Court denies Apple's motion to dismiss, a stay will conserve the resources of both the parties and the Court by preventing parallel litigation involving the same parties, patents and issues from proceeding in this case while those issues are being resolved in the *MTel I* case.  "The district court has the inherent power to control its own docket, including the power to stay proceedings."  *Soverain Software LLC v. Amazon, Inc.*, 356

F. Supp. 2d 660, 662 (E.D. Tex. 2005).  Management of the court's docket requires "the exercise

of judgment, which must weigh competing interests and maintain an even balance."  *Landis v. N.*

*Am. Co.*, 299 U.S. 248, 254 (1936).  On balance, the courts typically consider three factors: "(1)

whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving

party; (2) whether a stay will simplify issues in question and trial of the case; and (3) whether

discovery is complete and whether a trial date has been set."  *Soverain Software*, 356 F. Supp. 2d

at 662 (citation omitted).  "Essentially, courts determine whether the benefits of a stay outweigh

the inherent costs based on those factors."  *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.,*

*Ltd.*, No. 2:04-cv-32-TJW, 2008 U.S. Dist. LEXIS 87352, at *6 (E.D. Tex. Oct. 29, 2008).

Here, the benefits of granting a stay far outweigh any perceived prejudice to MTel.  With

regard to the first factor, MTel cannot be unduly prejudiced by a stay, nor could a stay present a

clear tactical disadvantage to MTel, as it has already had the opportunity to litigate these patents

against Apple (and achieved a favorable verdict).  *See also Personal Audio, LLC v. Apple Inc.*,

No. 9:11-cv-120-RC [Dkt. No. 29] (E.D. Tex. Oct. 3, 2011) (finding a stay does not unduly

prejudice or disadvantage Plaintiff where "it simply maintains the status quo" pending resolution

of the related litigation). Moreover, as the 428 and 946 Patents are near expiration, there is no

strategic advantage to be gained by either party if the Court stays *MTel II* in order to resolve the

issues of infringement, invalidity and/or damages raised in Apple's *MTel I* post-trial motions.[5]

In contrast, given MTel's assertion that the newly accused products have the same functionality

---

[5] While a delay caused by a stay is considered by the courts to be particularly burdensome where
the parties are competitors in the marketplace, (*see, e.g., 3rd Eye Surveillance, LLC v. Stealth*
*Monitoring, Inc.*, No. 6:14-cv-162-JDL, 2015 U.S. Dist. LEXIS 4213, at *5 (E.D. Tex. Jan. 14,
2015)), here, MTel and Apple are not direct competitors (*see* Exh. 3 at 63:6-9 ("Q. Okay. And
let's start out with some of the basics. MTel, LLC, your company, does not make any products,
correct?  A.  It doesn't make any products."); *see also* Exh. 5 at 12:2-10), and thus, the concerns
inherent with direct competitors, such as loss of market share and erosion of goodwill, are not
applicable.

as those found to infringe the 428 and 946 Patents in *MTel I*, denying a stay would unduly prejudice Apple by subjecting Apple to duplicative and unnecessary litigation. *See, e.g., RPost Holdings Inc. v. ExactTarget, Inc.*, No. 2:12-cv-512-MHS-RSP [Dkt. No. 90], at 5 (E.D. Tex. Sept. 29, 2014) (finding the first factor weighs in favor of a stay where the Defendant risked being subject to multiple litigations involving the same patent and same underlying issues).[6]  The first factor therefore weighs strongly in favor of granting a stay.

The second *Soverain Software* factor also weighs in favor of granting a stay.  To the extent that MTel is not barred from seeking further relief with respect to the 428 and 946 Patents, by resolving the invalidity and non-infringement disputes concerning these patents, which are still pending post-trial review in *MTel I*, the issues for trial (*e.g.*, invalidity of the asserted patents and non-infringement by the newly accused products asserted by MTel to have the same functionality as the previously litigated products) will be greatly simplified if not completely resolved. *See RPost Holdings*, No. 2:12-cv-512-MHS-RSP [Dkt. No. 90], at 6 (E.D. Tex. Sept. 29, 2014).  Thus, the second factor weighs strongly in favor of a stay as well.

Finally, with regard to the third factor, the instant dispute is still in its early stages regarding trial and discovery.  Indeed, Apple has not yet answered the *MTel II* complaint nor has the Court entered a Discovery Order or a Docket Control Order.  *Id.; see also 3rd Eye Surveillance*, 2015 U.S. Dist. LEXIS 4213, at *7 (finding the third factor favored a stay where the case was "in its nascent stages"). Because this case is still in the early stages, the third factor also weighs in favor of a stay.

---

[6] Should the Court or the Appeals Court find that Apple did not infringe the 428 and 946 Patents in *MTel I*, MTel would be precluded from litigating the 428 and 946 Patents in the present case. *See, e.g., Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045, 1055-59 (applying the *Kessler* Doctrine from *Kessler v. Eldred*, 206 U.S. 285 (1907) to preclude Brian Life from asserting infringement claims against certain Elekta products).

Accordingly, granting a stay pending resolution of *MTel I* would be both appropriate and prudent under the circumstances.

## IV.    CONCLUSION

For the foregoing reasons, Apple respectfully requests that this Court dismiss MTel's complaint in the above-captioned case or, in the alternative, grant a stay pending final resolution of the *MTel I* litigation.

Dated: February 12, 2015                                    Respectfully submitted,

By:  */s/ Brian E. Ferguson*
Brian E. Ferguson
WEIL GOTSHAL & MANGES LLP
1300 Eye Street NW, Suite 900
Washington, DC 20005
(202) 682-7000
(202) 857-0940 FAX
brian.ferguson@weil.com

Eric H. Findlay
State Bar No. 00789886
Brian Craft
State Bar No. 04972020
FINDLAY CRAFT, P.C.
102 North College Avenue, Suite 900
Tyler, TX 75702
(903) 534-1100
(903) 534-1137 FAX
efindlay@findlaycraft.com
bcraft@findlaycraft.com

**COUNSEL FOR DEFENDANT
APPLE INC.**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 12, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing via electronic mail to all counsel of record.

Daniel R. Scardino, Esq.
Craig S. Jepson, Esq.
Henning Schmidt
Debra L. Dennett
Raymond W. Mort
Dustin L. Taylor
Brian L. King
Erik G. Moskowitz
REED & SCARDINO LLP
301 Congress Avenue, Suite 1250
Austin, TX 78701
Tel. (512) 474-2449
Fax (512) 474-2622
dscardino@reedscardino.com
cjepson@reedscardino.com
hschmidt@reedscardino.com
ddennett@reedscardino.com
rmort@reedscardino.com
dtaylor@reedscardino.com
bking@reedscardino.com
emoskowitz@reedscardino.com

*Attorneys for Mobile Telecommunications Technologies, LLC*

*/s/ Brian E. Ferguson*
Brian E. Ferguson