UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| MOBILE TELECOMMUNICATIONS TECHNOLOGIES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>AT&T MOBILITY LLC and AT&T INC.<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 2:14-cv-00897-JRG-RSP<br>(LEAD CASE)<br><br>JURY TRIAL REQUESTED |
| MOBILE TELECOMMUNICATIONS TECHNOLOGIES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC.<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 2:14-cv-01057-JRG-RSP<br><br>JURY TRIAL REQUESTED |

**MTEL'S RESPONSE TO APPLE'S MOTION TO DISMISS OR,**
**IN THE ALTERNATIVE, MOTION TO STAY**

**TABLE OF CONTENTS**

I. INTRODUCTION ..... 1

**A.** Apple Prevented Damages on iOS 8 Products from Being Tried in *MTel I*. ..... 2

**B.** The Damages Trial in *MTel I* Excluded iOS 8 Products. ..... 4

**C.** *MTel II* ..... 6

II. APPLE'S ARGUMENT IS WRONG ON THE FACTS AND ON THE LAW ..... 6

**A.** Dismissal Is Inappropriate Because the Lump-Sum Award in *MTel I* Did Not Cover the Products Apple Reserved for Trial in *MTel II*. ..... 6

**B.** A Stay Until After Appeal Is Unprecedented and Inappropriate. ..... 10

III. CONCLUSION ..... 12

## TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*3rd Eye Surveillance, LLC v. Stealth Monitoring, Inc.*,
2015 U.S. Dist. LEXIS 4213 (E.D. Tex. Jan. 14, 2015) ........ 11

*Datatreasury Corp. v. Wells Fargo & Co.*,
No. 2:06-cv-72 DF, Dkt. No. 2463 (E.D. Tex. Jan. 12) ........ 7, 8

*Glenayre Elecs., Inc. v. Jackson*
443 F.3d 851 (Fed. Cir. 2006) ........ 9

*In re Bill of Lading Transmission and Processing Sys. Patent Litig.*,
681 F.3d 1323 (Fed. Cir. 2012) ........ 9

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936) ........ 10

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*,
No. 2:04-cv-32-TJW, 2008 U.S. Dist. LEXIS 87352 (E.D. Tex. Oct. 29, 2008) ........ 11

*Personal Audio, LLC v. Apple, Inc*.
2011 WL 3269330 (E.D.Tex. July 29, 2011) (Clark, J.) ........ 6, 7, 8, 9

*Soverain Software LLC v. Amazon, Inc.*,
356 F. Supp. 2d 660 (E.D. Tex. 2005) ........ 10, 11

Plaintiff MTel opposes Apple's Motion to Dismiss or in the Alternative Stay (D.I. 10 (Case No. 2:14-cv-01057)) this case ("*MTel II*") pending appeal of the related Case No. 2:13-cv-00258-RSP ("*MTel I*"). Apple must honor its commitment that *MTel II* can proceed now. Apple's unsupported argument that its bargain is negated by the jury's award of a lump-sum payment is incorrect.

## I. INTRODUCTION

Apple fought hard to remove the Apple iOS 8 operating system and all products using it from *MTel I*. In its Motion, Apple acknowledges that it agreed that the iOS 8 products would be excluded from *MTel I*:

> As iOS 8 was a new version of Apple's mobile operating system and not merely an incremental upgrade, Apple agreed that whether it infringed the asserted patents was not an issue to be decided in *MTel I*[1]

During the pretrial conference in *MTel I*, Apple contended that any verdict in *MTel I* would not be binding as to iOS 8 and related products:

> THE COURT: So under your position, iOS 8.0 is not in the case, and the ruling -- or the verdict of this jury up or down will not be binding as to that operating system?
> MR. DESAI: That's correct.[2]

Apple agreed with the Court that infringement of iOS 8 and related products would be tried in "another case," which is *MTel II*:

> THE COURT: All right. I mean, obviously if we go this way, then whether or not 8.0 infringes is something that will be for another case.
> MR. DESAI: We understand, Your Honor.[3]

On Apple's commitment, MTel and the Court agreed to exclude iOS 8 from *MTel I*:

---

1 D.I. 10 (Cause No. 2:14-cv-01057) at 4 (Apple's summary of the Pre-trial negotiations).

2 Exh. 1, *MTel I* Pre-Trial Hearing (11/07/14) at p. 63:11-14; *see also Id* 61:18-19.

3 Exh. 1, *MTel I* Pre-Trial Hearing (11/07/14) at p. 63:1-4.

> MR SCARDINO: But if they want to exclude it from this case, and it's going to be the subject of some future case, then I guess that's -- you know, that's acceptable.
> THE COURT: All right. That's what we'll do.
> MR. SCARDINO: All right. Thank you, Your Honor.[4]

Apple now asks to walk away from these representations to the Court. Apple's Motions should be denied.

### A. Apple Prevented Damages on iOS 8 Products from Being Tried in *MTel I*.

MTel filed its Complaint in *MTel I* over a year before Apple released the products accused in *MTel II*.[5] Indeed, Apple released these products less than two months before the *MTel I* trial, long after the close of expert and fact discovery.[6]

MTel urged trying the iOS 8 products during *MTel I*. At the final pre-trial conference held Nov. 7, Apple objected to an "exhibit relating to Apple's recently released operating system iOS 8, arguing that iOS 8 had not been addressed in MTel's infringement contentions or in any expert report served by the parties."[7] MTel asked to submit a supplemental expert report from its damages expert Walter Bratic to cover the iOS 8 products.[8] Apple objected.[9] Apple argued that Mr. Bratic should have submitted "projected" sales figures at the time of his initial opening report.[10]. Apple misrepresents what was said at the final pretrial conference. Apple writes:

> Importantly, MTel did not contest that its damages theory was based on a single-lump sum payment for the life of the patents.[11]

(D.I. 10 at 3). Apple's Ex. 2 highlights that first cited passage:

---

4 Exh. 1, *MTel I* Pre-Trial Hearing (11/07/14) at 64:11-16.

5 Exh. 1, *MTel I* Pre-Trial Hearing (11/07/14) at 61:18-19.

6 Indeed, Apple announced the release of iOS 8, iPhone 6, iPhone 6+, and the accused iPads, on September 17, 2014. (D.I. 10 at 4).

7 D.I. 10 at 4 citing Exh. 1 (MTel I Pretrial Tr. 11/07/2014 at 58:21–59:13).

8 See Exh. 2 to D.I. 10 (MTel I Pretrial Tr. 11/07/2014 at 18:21-19:13).

9 Exh. 1, *MTel I* Pre-Trial Hearing (11/07/14) at p. 20:1-24.

10 Exh. 1, *MTel I* Pre-Trial Hearing (11/07/14) at p. 18:21-19:13.

11 Exh. 1, *MTel I* Pre-Trial Hearing (11/07/14) at 21:14-22:5, 23:23-24:5.

THE COURT: Well, do you agree that the number that he set out in his initial report was a lump sum designed to cover the life of the patent?

MR. SCARDINO: It was a lump-sum calculation, but it was based on the -- the book of wisdom knowledge that would have been available at the time of the hypothetical negotiation that included the -- the actual number of sales which was a proxy for the extent of their use of their technology. We know that number is higher now just because time has passed.

THE COURT: Well, but didn't his number include some projection as to future sales?

(Apple's Ex. 2 to D.I. 10). Apple omits the next line that shows Apple's misrepresentation:

> MR. SCARDINO: It didn't. He only used the actual numbers that were provided by Apple at the time that he did the report. And -- and I'll say, Your Honor, that the patents extend for a life beyond this trial date. And he has not included projections for -- for the future past this trial date.

(Apple's Ex. 2 to D.I. 10, lines 21:25-22-5). Thus, MTel denied that its damages theory was based on a single-lump sum payment for the life of the patents.

The second passage Apple highlights is merely Apple's comments on Mr. Bratic's Supplemental Damages Report that this Court excluded:

> MR. STEPHENS: Thank you, Your Honor.
> So he opines to the lump sum on Page 7 of Paragraph 13 and on Page 68, Paragraph 149, he says, the license is for the life of the patents. The -- the book of wisdom, of course, hypothecates a projection at the date of the hypothetical negotiation. He could have projected that through any date he wanted to. And the supplemental report, as Your Honor will see, is based on a projection that could have been included at the outset.

(Apple's Ex. 2 to D.I. 10, lines 23:23-24-5). Nothing in this passage supports Apple's misrepresentation that "MTel did not contest that its damages theory was based on a single-lump

sum payment for the life of the patents." (D.I. 10 at 3). The best that Apple can muster is that MTel wanted to include in *MTel I* damages for the iOS 8 products and that Apple objected.

At any rate, this Court excluded both the exhibit and the Supplemental Expert Report, as Apple asked, but only after Apple agreed that the iOS 8 products would be tried in *MTel II*.[12]

### B. The Damages Trial in *MTel I* Excluded iOS 8 Products.

The *MTel I* trial commenced November 10, 2014.[13] It was stated throughout by both MTel and Apple that the jury should engage in a hypothetical negotiation and that at that negotiation the royalty should be in the form of a lump-sum payment for Apple's infringing activity proved by MTel at the trial. The Jury Instructions and the Jury Verdict Form required the jury to award a lump-sum reasonable royalty "adequate to compensate MTel for the infringement," admonished the Jury to "award only those damages that MTel establishes that it more likely than not suffered," and finally the damages question in the verdict form asked the Jury "What sum of money, if paid now in cash, do you find is adequate to compensate MTel *for the conduct you found to infringe*."[14]

At trial, neither side mentioned the products reserved for *MTel II*, nor the increase in damages that would result if those products had been included, as MTel requested, through the proposed supplemental expert report of Mr. Bratic. At trial, Mr. Bratic testified that the value of Apple's use of MTel's patented technology—was $237.2 million.[15] That figure excluded the iOS 8 products reserved for litigation in *MTel II*. All of the damages calculations shown to the

---

12 Exh. 1, *MTel I* Pre-Trial Hearing (11/07/14) 63:11-14, 63:1-4, and 64:11-16; and Exh. 2, *MTel I* Trial Transcript 11/10/2014 (morning) at 6:12-8:10.

13 The patents-in-suit being U.S. Patent Nos. 5,809,428 ('428), 5,754,946 ('946), 5,894,506; 5,590,403; 5,915,210; and 5,659,891.The claims regarding U.S. Patent No. 5,786,748 were dismissed before trial.

14 Exh. 3, *MTel I* Trial Transcript 11/17/2014 (morning) at 144:24-25 and 145:3-5; Exh. 4, *MTel I* Dkt. No. 65 Question No. 14.

15 Exh. 5, *MTel I* Trial Transcript 11/13/2014 (morning) at 140:18-22.

jury excluded iOS 8 products as was agreed during pre-trial.[16] Importantly, the increase in damages associated with those products was specifically excluded from the jury by Apple's request and agreement to reserve those damages for *MTel II*.

Before instructing the jury, the Court summarized the parties' contentions and described the accused Apple products and services as "Apple's AirPort Wi-Fi products and iPhone, iPad, or iPod Touch products [as well as] Apple Messaging Services."[17] There was no mention of Apple's iOS 8 operating system and there was no mention of any of the products that run it (e.g., Apple's iPhone 6 and iPhone 6 Plus).

This Court instructed the jury that MTel sought damages for only the infringing conduct that was proved by evidence presented to the Jury, which did not include iOS 8 or related products:

> MTel seeks money damages from Apple for allegedly infringing MTel's patents-in-suit by making, importing, using, selling, or offering for sale Apple's AirPort WiFi products and iPhone, iPad, or iPod Touch products and providing Apple Messaging Services, which are known as the accused Apple products and services that Apple -- that MTel argues are covered by the asserted claims from MTel's patents-in-suit.[18]

This Court instructed the jury to consider the use that Apple had made of MTel's patents in awarding damages:

> If you decide that any claim of a patent has been infringed and that the same claim is not invalid, you will then need to decide any money damages to be awarded to MTel as compensation for that infringement.[19]

These instructions refer to past damages for "compensation for that infringement."

Although Mr. Bratic had placed the value of Apple's use of MTel's patents for products other than those running iOS 8 at $237.2 million, the jury found and the Court entered a

---

16 Exh. 6, *MTel I* Trial Transcript 11/13/2014 (afternoon) at 40:18-41:22.4

17 Exh. 3, *MTel I* Trial Transcript 11/17/2014 (morning) at 115:11-18.

18 Exh. 3, *MTel I* Trial Transcript 11/17/2014 (morning) at 115:11-18.

19 Exh. 3, *MTel I* Trial Transcript 11/17/2014 (morning) at 116:9-12.

judgment finding infringement and awarding damages of $23.575 million plus pre-judgment, post-judgment interest, and costs.[20]

### C. *MTel II*

The complaint for *MTel II*, filed on Nov. 19, 2014 by MTel, alleges infringement of the ’428 and ’946 Patents by Apple’s iOS 8 operating system and related products, including the iPhone 6 and iPhone 6 Plus and all versions of Apple’s iPad running iOS 8.[21] (The same products reserved for future litigation in the Pre-Trial Hearing of *MTel I*).[22] In its complaint, MTel alleged that the newly accused Apple products “contain similar features that are not colorably different from those found to be infringing in [the *MTel I* litigation].”[23] In support, MTel pointed to the favorable jury verdict it received in the *MTel I* litigation.[24]

## II. APPLE’S ARGUMENT IS WRONG ON THE FACTS AND ON THE LAW.

Apple opens with its only argument: that “the lump-sum royalty awarded by the *MTel I* jury was effectively a fully paid-up license covering all of Apple’s past and future use of the asserted patents ***”. (D.I. 10 at 6).[25] Apple’s reliance on the phrase “lump-sum” is misplaced.

### A. Dismissal Is Inappropriate Because the Lump-Sum Award in *MTel I* Did Not Cover the Products Apple Reserved for Trial in *MTel II*.

Apple relies principally and heavily on *Personal Audio, LLC v. Apple, Inc*. 2011 WL 3269330 (E.D.Tex. July 29, 2011) (Clark, J.) but Apple’s reading of that decision conflicts with both logic and the law. Although the Court found that Apple had a “fully paid up license to the

---

[20] Exh. 7, *MTel I* Judgment.

[21] *See MTel II* Dkt. No. 1.

[22] Exh. 1, *MTel I* Pre-Trial Hearing (11/07/14) 63:11-14, 63:1-4, and 64:11-16

[23] *MTel II* Dkt. No. 1 at ¶ 15.

[24] *MTel II* Dkt. No. 1 at ¶ 15.

[25] Apple also calls this a “freedom-to-operate” license. (D.I. 10 at 7 “Apple received a ‘freedom-to-operate’ license to use the patented technology.”).

patents-in-suit, covering all past and future use," it did so only after thorough, intensive analysis of the facts presented at trial and the language contained in the Jury Instructions and Verdict Form.[26]

Unlike this matter, in *Personal Audio*, "the verdict form" stated that "a lump sum royalty" covered "all past and future sales of Apple products." *Id*. at *4. Here, Verdict Question No. 14, to which Apple has never objected, asked,

> What sum of money, if paid now in cash, do you find is adequate to compensate MTel for the conduct you found to infringe?[27]

Thus, the facts here are distinguishable from the facts in *Personal Audio*, and are more similar to *Datatreasury Corp. v. Wells Fargo & Co.*, No. 2:06-cv-72 DF, Dkt. No. 2463, (E.D. Tex. Jan. 12) where this Court held that the jury must be held to the Court's lawful instructions and verdict question despite any expert testimony to the contrary.[28] As in *Datatreasury*, the Jury Instructions and the damages interrogatory in the Verdict Form in this case told the jury to only award damages for the activities engaged in by Apple that the jury found infringed the patents.[29]

Furthermore, in *Personal Audio*, Apple had not successfully stripped away for purposes of consideration of damages a discrete subset of products agreeing to trial on those products at another time in exchange for keeping out a Supplemental Damages Report. *Id*. at *2.

> THE COURT: All right. I mean, obviously if we go this way, then whether or not 8.0 infringes is something that will be for another case.

---

26 *Id* at 11

27 Exh. 4, *MTel I* Dkt. No. 65 Question No. 14.

28 No. 2:06-cv-72 DF, Dkt. No. 2463 at 5 (E.D. Tex. Jan. 12). Datatreasury's expert testified that a "lump sum" royalty is a "set dollar amount" for "whatever may have happened in the past and going into the future, basically paying for it all at once."

29 *MTel I* Trial Transcript 11/17/2014 (morning) at 116:9-12 ("If you decide that any claim of a patent has been infringed and that that same claim is not invalid, you will then need to decide any money damages to be awarded to MTel as compensation *for that infringement*." (emphasis added).

MR. DESAI: We understand, Your Honor.[30]

In *Personal Audio* the trial testimony on damages was not focused narrowly on a time-limited set of products as it was here.[31] Instead, the jury instructions described "lump-sum" as:

> In a lump-sum royalty agreement, the licensee must pay the entire royalty amount up front; in exchange, the licensee is granted a license to use the patented technology for the remainder of the patent term without any further expenditure.

*Id.* at *4. In stark contrast, the jury instructions for *MTel I* merely contrasted a "lump-sum royalty" with a stream of payments:

> THE COURT: A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. *** In this case, the parties agree that if MTel is entitled to damages, the royalty amount should be in the form of a lump-sum royalty. A lump-sum royalty is a royalty payment where the patent owner receives a single, upfront payment.[32]

Indeed, *Personal Audio* did not make a single finding that approaches the remarkable proposition that, as a matter of law, any lump sum award in a patent case covers all products made by a company forever, regardless of whether they are accused in the case. WL 3269330, at *1 (E.D.Tex. July 29, 2011) (Clark, J.) ("The jury was given a choice of awarding damages in the form of a per unit running royalty for both past and future infringing sales, as requested by Personal Audio, or in the form of a lump sum royalty, as espoused by Apple. The jury chose the lump sum option, albeit in the amount of $8 million, rather than the $5 million suggested by Apple's damages expert.").

Another fact distinguishing *MTel I* from *Personal Audio* is that in *MTel I* Apple never objected to the wording of Verdict Form Question No. 14 or the damages related Jury

30 Exh. 1, *MTel I* Pre-Trial Hearing (11/07/14) at p. 63:1-4.

31 "However, Mr. Nawrocki's explanation *** could have been understood to include value contributed by iTunes, which operates on a computer separate from the accused iPod products and was not itself an accused product." Id. at *3.

32 Exh. 1, *MTel I* Pre-Trial Hearing (11/07/14) at p. 145:13-17.

Instructions, neither of which discuss a "freedom-to-operate" license or inform the jury that it should issue a "lump-sum" royalty damages amount for all past and all future uses by Apple of the patents. In fact, the Verdict Form does not even use the term "lump sum." In *Personal Audio*, Apple objected to the wording of the instructions and a verdict question. Having failed to timely object in *MTel I*, Apple has waived any objection.

In *Glenayre Elecs., Inc. v. Jackson* 443 F.3d 851, 866 (Fed. Cir. 2006) the patent owner, Jackson, contended that the district court promised to bifurcated the case into two separate trials, where the first trial would address Glenayre's direct infringement, and the second would address both Glenayre's customers' direct infringement and Glenayre's indirect infringement. The court analyzed whether the statements or actions by the district court constituted a promise to hold a second trial. The district court never ensured Jackson a second trial on the issue of indirect infringement by Glenayre. Rather, the court simply stayed his counterclaims of indirect infringement against Glenayre pending the conclusion of the trial that would address his counterclaims of direct infringement against Glenayre. The court found that Jackson could not show that the district court "lost sight" of its own plan and procedure when he could not show that the district court actually provided a plan and procedure to hold a second trial regardless of the outcome of the first. As shown several times above, the Court, in the case of *MTel I*, expressed a specific plan and procedure to hold a second trial on the excluded products; moreover, Apple was aware of this and agreed to the plan.

As Apple is incorrect regarding the import of the facts and the law, dismissal is not permitted. *In re Bill of Lading Transmission and Processing Sys. Patent Litig.*, 681 F.3d 1323, 1341 (Fed. Cir. 2012) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

**B. A Stay Until After Appeal Is Unprecedented and Inappropriate.**

Apple argues only that a stay will conserve judicial and party resources. That argument is meritless because *MTel II* involves only damages for Apple's iOS 8 and related products, including the iPhone 6 and iPhone 6+, which Apple successfully segregated from *MTel I*. Furthermore, a stay will delay any settlement prospects.

Apple repeatedly endorses, and never denies, MTel's statements that the recently released Apple products at issue in *MTel II* infringe for the reasons that the jury found the earlier Apple products infringed in *MTel I*. (D.I. 10 at 6): "MTel alleged that the newly accused Apple products 'contain similar features that are not colorably different from those found to be infringing in [the *MTel I* litigation].'"; D.I. 10 *passim*, coyly referring to "the patented technology" to eschew identifying the actual products; D.I. 10 at 13-14: "given MTel's assertion that the newly accused products have the same functionality insists that as those found to infringe the '428 and '946 Patents in *MTel I* ***."). Therefore, *MTel II* can be limited to just damages on Apple's newly released iOS 8 products. There would be no parallel litigation as Apple uses that term and no prejudice to Apple.

"The district court has the inherent power to control its own docket, including the power to stay proceedings."[33] Management of the Court's docket requires "the exercise of judgment, which must weigh competing interests and maintain an even balance."[34] On balance, courts typically consider three factors: "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been

---

33 *Soverain Software LLC v. Amazon, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005).

34 *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

set."[35] "Essentially, courts determine whether the benefits of a stay outweigh the inherent costs based on those factors."[36]

The first *Soverain Software* factor (prejudice) weighs against a stay. *3rd Eye Surveillance, LLC v. Stealth Monitoring, Inc.*, 2015 U.S. Dist. LEXIS 4213 (E.D. Tex. Jan. 14, 2015) ("the *Soverain* factors weigh against granting a stay pending resolution of the petition for inter partes review.). Granting a stay of *MTel II* would deny MTel the benefits of its favorable verdict in *MTel I* and allow Apple to continue its infringement unchecked. Furthermore, the asserted patents are in the sunset of their patent term and a stay would virtually ensure that Apple would not be brought to account for its infringement within the term of the patents.

The second *Soverain Software* factor (simplification) militates in MTel's favor because a stay would not simplify the issues or the trial of the case. For example, Apple has not challenged the *MTel I* Jury's validity verdict on the two patents asserted against Apple in *MTel II*. In fact, a stay might occasion additional complexity because as time passes, Apple may introduce additional products that infringe the patents. This Court and the parties previously agreed during the pretrial conference in *MTel I* that another case, *MTel II*, would be used to determine damages for Apple's new iOS 8 operating system and the devices using it.[37] Finally, the consolidation of *MTel II* with *AT&T Mobility LLC*, et al, (Cause No. 2:14-cv-897) supports that a stay would only complicate the issues. (D.I. 12 (Cause No. 2:14-cv-01057)).

Finally, with regard to the third factor, the instant dispute is still in its early stages regarding trial and discovery; however, much of the discovery necessary for *MTel II* was already conducted during the *MTel I* case, including infringement, damages and invalidity related

---

35 *Soverain Software*, 356 F. Supp. 2d at 662.

36 *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, No. 2:04-cv-32-TJW, 2008 U.S. Dist. LEXIS 87352, at *6 (E.D. Tex. Oct. 29, 2008).

37 Exh. 1, *MTel I* Pre-Trial Hearing (11/07/14) at 61:18-19.

discovery. Therefore, although Apple has not yet answered the *MTel II* complaint, the case is actually quite far along in terms of the parties' respective preparedness for trial. A stay would merely delay.

## III. CONCLUSION

For the reasons stated above, MTel respectfully requests that this Court deny Apple's Motion to Dismiss MTel's Complaint in the above-captioned case, as well as, deny Apple's Motion to Stay pending final resolution of the *MTel I* litigation.

Dated: March 2, 2015

Respectfully submitted,

*/s/ Daniel R. Scardino*

Daniel Scardino
Texas State Bar No. 24033165
Cary Ferchill
Texas State Bar No. 06906900
Henning Schmidt
Texas State Bar No. 24060569
Anthony D. Seach
Texas State Bar No. 24051897
Raymond W. Mort, III
Texas State Bar No. 00791308
Craig S. Jepson
Texas State Bar No. 24061364
REED & SCARDINO LLP
301 Congress Avenue, Suite 1250
Austin, TX 78701
Tel.: (512) 474-2449
Fax: (512) 474-2622
dscardino@reedscardino.com
cferchill@reedscardino.com
hschmidt@reedscardino.com
aseach@reedscardino.com
rmort@reedscardino.com
cjepson@reedscardino.com

Deron Dacus
Texas State Bar No. 00790553
THE DACUS FIRM, P.C.
821 ESE Loop 323, Suite 430
Tyler, Texas 75701
(903) 705-1117 (telephone & facsimile)
ddacus@dacusfirm.com

**ATTORNEYS FOR PLAINTIFF MOBILE TELECOMMUNICATIONS TECHNOLOGIES, LLC**

**CERTIFICATE OF SERVICE**

I hereby certify that on March 2, 2015, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Eastern District of Texas, using the electronic case files system of the court. The electronic case files system sent a "Notice of Electronic Filing" to individuals who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Daniel R. Scardino*
Daniel R. Scardino